**SO ORDERED.**

**SIGNED this 16 day of May, 2008.**



_____
JANICE MILLER KARLIN
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re: )
 )
AMIE ROBINSON, ) Case No. 07-41562-13
 )
 Debtor. )
_____)

MEMORANDUM ORDER AND OPINION OVERRULING
OBJECTION TO CONFIRMATION OF PLAN

This matter is before the Court on DaimlerChrysler Financial Services Americas, L.L.C.'s ("Chrysler Financial" or "Chrysler") Objection to Confirmation of Debtor's Chapter 13 Plan.[1] Chrysler Financial claims the plan of Debtor, Amie Robinson, has not been proposed in good faith and thus cannot be confirmed pursuant to 11 U.S.C. § 1325(a)(3).[2]

_____

[1] Doc. 16.

[2] This case was filed after October 17, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) became effective. Pub. L. 109-8. All future statutory references are thus to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 11 U.S.C. §§ 101 - 1532 (2005), unless other specifically noted.

The parties have filed a Joint Stipulation of Facts,[3] which the Court adopts, and have also filed briefs on this issue. The Court has jurisdiction to decide this matter,[4] and it is a core proceeding.[5]

## I. FINDINGS OF FACT

Debtor purchased a 2003 Dodge Durango on February 12, 2005 from BME, Inc. dba Briggs Dodge. She entered into a contract with Chrysler Financial to finance that purchase in the amount of $22,102 at 17.74% interest,[6] and Chrysler Financial has a perfected lien on the vehicle. On August 7, 2007, Debtor filed her first Chapter 13 petition, thinking that more than 910 days had passed since the purchase of the Durango.[7] At that point, however, only 906 days had expired from the date of that purchase. Debtor's last payment to Chrysler, before filing the bankruptcy petition, was made May 23, 2007.

In her Chapter 13 plan in that first case, Debtor indicated an intent to cram down the debt owed to Chrysler Financial, believing that the Durango was not subject to the anti-bifurcation provisions found in the "hanging" paragraph at the end of 11 U.S.C. § 1325(a). Chrysler Financial objected to that plan, noting that the Durango was purchased 906 days prior to the filing of the bankruptcy, and that the provisions of the hanging paragraph preventing bifurcation did apply, since

---

[3] Doc. 44.

[4] 28 U.S.C. § 1334.

[5] 28 U.S.C. § 157(b)(2)(L).

[6] *See* DaimlerChrysler Proof of Claim No. 5-1 filed December 7, 2007 as well as Exhibit 2 to Stipulation of Parties, Doc. 44.

[7] Case No. 07-41065.

2

the purchase occurred within the 910-day window provided by statute. At no time did Chrysler Financial argue that Debtor's bankruptcy had been filed in bad faith.[8]

Only when Chrysler Financial objected to confirmation of Debtor's plan did she apparently realize that either she or her attorney had miscounted the number of days between purchase and filing, and that she had actually filed five days too soon to take advantage of the 910-day provision, discussed below. Debtor then failed to make any payments to the Trustee in that first case, and it was dismissed on October 23, 2007 upon the Trustee's motion. Fifteen days later, on November 7, 2007, Debtor filed this Chapter 13 proceeding.

The parties' Stipulation (at paragraph 11) indicates that at that point, Debtor was past due three payments, in an amount totaling $1,605.32, but the paragraph of the Stipulation so stating contradicts another part of the Stipulation (paragraph 12), which states "Debtor remains contractually due for May 2007 just as at the time of the first filing." It is further inconsistent with Chrysler Financial's brief, which states that "now the delinquency is $3,608.76." Notwithstanding the confusion over the exact amount of Debtor's current delinquency, it does not change the legal analysis, or result, of this decision.

As of the date the Stipulation was signed, Debtor had made approximately $950 in payments to the Chapter 13 Trustee, at $417 per month, but the Trustee had not yet made any distribution to Chrysler Financial or anyone else since the filing of the second case.[9] Debtor's schedules and

---

[8]Doc. 15 in first case.

[9]The Trustee made an oral motion at a hearing held January 30, 2008 to allow him to begin distributions to creditors, as if the plan had been confirmed, because the objection to confirmation was delaying his ability to distribute funds received. The Court granted that oral motion by an order entered February 6, 2008. *See* Doc. 32. In addition, Debtor appears to have stable employment, and there is a wage withholding order in place, so the Court understands Debtor is now making payments through her employer. The Trustee did file a Motion to Dismiss on January 2, 2008, seeking dismissal for failure to make payments, which has been continued from month to month at the Trustee's request. *See* Doc. 23. If the Debtor does not make payments in an amount sufficient to retire the crammed down debt to Chrysler,

3

Chapter 13 plan in the present case do not reflect any change of circumstances from the first case,[10] and Debtor proposes to treat Chrysler Financial's claim the same as it was treated in the first case, since now more than 910 days had actually passed between the car's purchase and the date of this second filing.

Simultaneously with filing her second case, Debtor filed a motion to extend the automatic stay pursuant to § 362(c)(3),[11] and set the matter for a hearing within the required thirty days. Debtor's counsel mailed notice of her motion and the hearing date to Chrysler Financial at the address she had used in her original matrix,[12] although by that time, Chrysler Financial had filed a Proof of Claim in her first case, directing all notices to the address of its counsel.[13] Her counsel also failed to mail a copy of this motion to counsel for Chrysler Financial who had entered her appearance in the earlier case[14]--- even though the prior case had been dismissed only 15 days earlier, and

---

her case will obviously have to be dismissed. Chrysler has not, however, pursued an objection to confirmation based on lack of feasibility or lack of adequate protection.

[10]The schedules do seem to suggest that perhaps Debtor was divorced between the first and second filings, because the marital status on Schedule I shows "married" in the first case, and "single" in the second case. Because counsel elected not to include that information in the Stipulation, however, the Court does not rely on it.

[11]Doc. 6.

[12]Chrysler Financial Corporation, 6800 College Boulevard, Suite 700, Overland Park, KS 66211-1557.

[13]*See* Claim No. 3-1 in the first case.

[14]The address requested by Chrysler Financial for notices in the prior case was: DaimlerChrysler Financial Services Americas, c/o Riezman Berger P.C., 7700 Bonhomme Ave, 7th Floor, St. Louis, MO 63105. That is the address of counsel for Chrysler Financial in each of the two cases.

Chrysler's counsel had actively objected to confirmation in that case.[15] Because of this notice issue, Chrysler neither objected to the motion to extend the stay nor appeared at the hearing.

In an affidavit filed in support of her motion to extend the automatic stay, Debtor candidly admitted there was only one reason she had allowed her prior case to be dismissed. That reason was because Debtor had "miscalculated the date of the purchase of her car and it had actually been purchased 904 days prior to filing. That the Debtor could realize a considerable savings by having her case dismissed and refiling after 910 days from the purchase."[16]

Chrysler Financial has now objected to Debtor's new Chapter 13 plan on the basis that it was not filed in good faith; it has pursued no other objection to confirmation and has filed no motion to dismiss, for non-payment, lack of adequate protection, or otherwise. Chrysler Financial contends that by dismissing the first bankruptcy and refiling the case after the passage of the 910 days necessary to allow her to cram down its debt, Debtor has by definition not proceeded in good faith and the Court should deny confirmation of her plan on that basis, alone. In response, both Debtor and the Chapter 13 Trustee contend that Debtor simply engaged in legitimate bankruptcy estate planning, and that taking advantage of statutory provisions does not constitute a lack of good faith.

Additional facts will be discussed below, if necessary.

## II. ANALYSIS

Before the enactment of BAPCPA, the claims of secured creditors could be bifurcated into secured and unsecured portions, based on the value of the collateral securing the debt on the date of

---

[15]At a hearing held February 27, 2008, the Court declined to estop Chrysler Financial from pursuing its objection to confirmation based on bad faith, notwithstanding the Court's order sustaining Debtor's Motion to Extend the Automatic Stay, as a result of counsel's failure to properly notify Chrysler of the filing of that Motion. His decision to ignore Chrysler's counsel who had actively, and recently, objected to confirmation of the plan in the first case was improper; the Court does not, however, attribute to Debtor that poor decision made by her counsel.

[16]Doc. 6.

filing. The accepted vernacular for such bifurcated claims was that the claim was "crammed-down" to the value of the collateral. The value of the collateral then had to be paid over the life of the Chapter 13 plan, with interest at the rate mandated by the Supreme Court's decision in *Till v. SCS Credit Corp*.[17]

In passing BAPCPA, Congress elected to differentiate between the plan treatment required for debts created when a creditor loaned money for the purchase of a motor vehicle for a debtor's personal use within 910 days preceding the filing date, and other debts. It did so by inserting an unnumbered paragraph at the end of § 1325(a)(9). This paragraph states, in pertinent part, as follows:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in Section 30102 of title 49) acquired for the personal use of the debtor...."

The applicable subsection of § 506 to which this paragraph refers is § 506(a)(1), which provides that "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property...."

Accordingly, the language contained within the hanging paragraph makes the value of the collateral irrelevant in determining the allowed amount of a claim secured by a purchase money security interest in a vehicle acquired within 910 days of the bankruptcy filing. And unless the amount of the claim is subject to reduction for reasons other than collateral value, the creditor's allowed secured claim is fixed at the amount of the underlying debt under nonbankruptcy law.

---

[17]541 U.S. 465, 484-85 (2004) (adopting formula approach, requiring adjustment of prime national interest rate based on risk of nonpayment).

The parties stipulated that Debtor would have been required to pay Chrysler Financial's entire claim had she remained in the original case. In fact, Debtor readily admits that her inability to cram down Chrysler Financial's claim was the motivating factor in allowing her original case to be dismissed, so that she could refile after the passage of the 910 day period specified in the hanging paragraph. The issue before the Court is whether Debtor's decision to allow the prior bankruptcy to be dismissed, and to then refile shortly thereafter in order to take advantage of the ability to cram down the value of the automobile, and avoid the provisions of the hanging paragraph, in and of itself constitutes a lack of good faith. Based on the analysis provided below, the Court finds that Debtor's actions do not constitute a lack of good faith.

Good faith is determined by looking at a totality of the circumstances on a case-by-case basis.[18] In *Flygare*, admittedly a pre-BAPCPA case, the Tenth Circuit adopted a nonexhaustive list of eleven relevant factors to guide courts in their determination of good faith.[19] Those factors are as follows: (1) the amount of the proposed payments and the amount of the debtor's surplus; (2) the debtor's employment history, ability to earn and likelihood of future increases in income; (3) the probable or expected duration of the plan; (4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court; (5) the extent of preferential treatment between classes of creditors; (6) the extent to which secured claims are modified; (7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7; (8) the existence of special circumstances such as inordinate medical expenses; (9) the frequency with which the debtor has previously sought

---

[18]*Flygare v. Boulden,* 709 F.2d 1344, 1347 (10th Cir.1983). The Tenth Circuit confirmed the continuing viability of *Flygare* in *In re Gier*, 986 F.2d 1326 (10th Cir. 1993).

[19]*Id* at 1347-48 (quoting *In re Estus,* 695 F.2d 311, 317-18 (8th Cir. 1982)).

7

bankruptcy relief; (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and (11) the burden that the plan's administration would place upon the trustee.[20] These factors are to be weighed according to the relevant facts and circumstances of each case.[21] Debtor, as the party seeking a Chapter 13 discharge, has the burden of proving her plan was proposed in good faith.[22]

The issue in this case is very straightforward; did Debtor act in good faith in allowing her prior bankruptcy case to be dismissed so that she could refile to take advantage of certain provisions of the bankruptcy code? Because the creditor has admitted that the only allegation of bad faith arises out of Debtor allowing the prior case to be dismissed, after realizing that she or her counsel had miscounted the number of days between purchasing the car and filing her petition, only a very few of the eleven *Flygare* factors warrant discussion in this case.

One of the most clearly applicable factors is the extent to which secured claims are modified. In this case, there is now only one secured claim—Chrysler's. Chrysler Financial has a secured claim that, through the operation of § 506, will be split into a secured claim and an unsecured claim based upon the value of the property, with only the secured portion required to be paid through the Chapter 13 plan, with interest, if this plan is confirmed. Although bifurcation of Chrysler Finance's claim is clearly authorized by the provisions of § 1325(a), Debtor would admittedly not have been able to avail herself of this option had she remained in her initial bankruptcy case.

Although the Court is unaware what the Durango's value was on the date of filing, Debtor's plan proposes to pay only $13,200 to Chrysler, while Chrysler's Proof of Claim indicates a debt of

---

[20]*Id.*

[21]*Id.* at 1347.

[22]*In re Alexander*, 363 B.R. 917 (10th Cir. BAP 2007).

8

Case 07-41562   Doc# 58-1   Filed 05/16/08   Page 8 of 15

$19,848.85. Chrysler has never argued that $13,200 does not accurately reflect the Durango's value as of the date of the first or second filing. Accordingly, Debtor's re-filing results in over a $6,000 "loss" to Chrysler. But the fact that Debtor has no other secured debt at all–no house,[23] no "toys," etc,. reflects a debtor who is not purposely running up debt. This first factor is thus neutral, because although Chrysler Financial is being harmed by the refiling, no other secured creditor is harmed.

The second factor with possible relevance is the frequency with which Debtor has sought bankruptcy relief. The record shows that this is Debtor's second bankruptcy filing in a matter of just a few months. Although certainly a factor to consider, the Court finds that Debtor is not the type of serial bankruptcy filer that this factor typically addresses. Debtor has not sought repeated relief from the Bankruptcy Courts in an effort to delay or frustrate attempts by her creditors to collect their debts.

The purpose of the back-to-back filings was clearly to remedy an error in calculating the number of days between the date Debtor purchased her car and the filing of the bankruptcy petition. There has been no evidence (or even argument) presented that Debtor has attempted to hide assets or that her proposed plan fails to set forth her best efforts at repaying her creditors. Further, as the Trustee notes in his brief, and which this Court's own experience corroborates, Debtor has relatively low unsecured debt for a single debtor with below-median income, no priority debt, and relatively small credit card debt. And she did not incur additional unsecured debt between the two bankruptcies, which might have reflected a debtor who was not acting in good faith.

---

[23]Debtor made no provision to cure the arrearage on her home, and did not object to a Motion for Relief from Stay filed by the home lender. Debtor has since moved from the house in question.

9

The remaining factors are either neutral, or weigh in favor of Debtor. Debtor is not proposing a plan payment that leaves her with any amount of surplus income.[24] Her schedules reflect that she is a single mother of five, who receives only $500 per month child support, and whose income was less than half the Kansas median income for a family her size.[25] She now owns no real property, and very little personal property, and there is no indication from Debtor's employment history that there is a likelihood of future increases in income beyond that necessary to adjust for increased costs of living.

The plan proposes to run at least the length required under the Code,[26] there are no allegations that the plan's statements of the debts, expenses and percentage repayment of unsecured debt are inaccurate or that Debtor is in any other way attempting to mislead the Court or creditors. Further, the plan does not contain provisions discriminating against any particular class of creditor, nor providing preferential treatment between classes of creditors. Debtor is not attempting to discharge any debt that would not be dischargeable in Chapter 7, there do not appear to be any special circumstances, nothing in the record indicates a bad motivation or a lack of sincerity of the Debtor in seeking Chapter 13 relief, and there is nothing to indicate that the administration of the plan will place an undue burden upon Trustee. In fact, the Trustee has filed a brief in favor of confirming Debtor's plan.

---

[24]In fact, a review of her Schedules I and J show excess income of $334, with a plan payment of $417.00 for the first 24 months. Accordingly, feasibility appears to be a bigger issue than bad faith.

[25]Her "current monthly income," as defined by 11 U.S.C.§ 101(10A), is $30,495, and the applicable median family income for her family is $67,026.

[26]Because Debtor's income is below the median income for the State of Kansas, the "applicable commitment period" is three years and her plan must run at least that long unless she pays all her creditors in full prior to that time. *See* 11 U.S.C. § 1325(b)(4) (stating that the applicable commitment period is three years unless a debtor has income above the median income in the debtor's state) and *In re Pohl*, 2007 WL 1452019 (Bankr. D. Kan. 2007) (holding that the applicable commitment period for below median income debtors is a temporal requirement, so plans must propose to run at least three years).

10

At least one other court has dealt with this issue, although it involved slightly different facts. In *In re Murphy*,[27] the debtor filed a Chapter 13 case before 910 days had expired from the date he purchased his car. He indicated an intent to cram down the debt secured by that vehicle, notwithstanding that the purchase was subject to the provisions of § 1325(a)'s hanging paragraph. At the time Murphy filed his case, the bankruptcy judges in the Middle District of Georgia were split in interpreting the hanging paragraph; whether a debtor could cram down his vehicle debt depended on which bankruptcy judge was assigned when the case was filed.

Unfortunately for the debtor, the judge assigned to his case held the view that the hanging paragraph prevented him from cramming down that debt; confirmation of the proposed plan that called for the cram down was therefore denied. As a result of that ruling, debtor was required to pay the entire amount of the creditor's claim if he intended to retain his car. Payment of the entire secured claim rendered the plan unfeasible. Although that debtor had paid approximately $1,200 in to the Chapter 13 plan, he later stopped making payments and the case was dismissed about five months later.

Following dismissal of that case, the debtor waited just over a month to file a new Chapter 13. When the new case was filed, 915 days had passed since the purchase of the vehicle in question. That made the hanging paragraph inapplicable, allowing him to cram down the vehicle to its then value. The creditor objected to the new plan, asserting that the debtor was not acting in good faith by allowing the prior case to be dismissed so that he could take advantage of the passage of the 910 days and cram down its claim.

---

[27]375 B.R. 919 (Bankr. M.D. Ga. 2007) (finding that debtor's case was neither filed nor his plan proposed with a lack of good faith, applying the "totality of circumstances" test, and also noting that there was no evidence the debtor "played hide and seek with the car" or that the creditor had attempted to repossess it).

11

The court disagreed, finding that the debtor's actions in filing the first case were not in bad faith, and that the treatment of the creditor's claim under the hanging paragraph made the debtor's Chapter 13 plan unfeasible. Allowing that case to be dismissed, waiting until the 910 days had elapsed to avoid the hanging paragraph, and then refiling the case did not, according to the court in *Murphy*, constitute a lack of good faith.

Although this case provides somewhat different facts than *Murphy*, the most notable of which is that there is not a clear showing here that Debtor's original plan lacked feasibility if she was required to pay all of Chrysler Financial's claim, the Court agrees with the *Murphy* holding that allowing a bankruptcy case to be dismissed with plans to refile that case upon the passage of the 910 day period does not, without more, demonstrate a lack of good faith. As the Chapter 13 Trustee astutely noted in his brief, Chrysler Financial does not assert that Debtor's filing would have been in bad faith if she had simply waited five more days—until day 911 after the purchase, to file her first bankruptcy, and therein propose to cram down Chrysler's claim. And Debtor's motivation for waiting until day 911 to initially file is the same motivation that spurred Debtor's refiling—to cram down the secured claim of Chrysler Financial to the value of the collateral so she could afford to retain it. It is thus difficult to see how Debtor was advantaged by filing five days earlier, in the first case, or how Chrysler Financial was disadvantaged by her doing so—other than because that passage of time tipped the case past the 910 day window.

Although the parties did not include this information in their Stipulation of Facts, the Court can and does take judicial notice of the content of Debtor's schedules in the first and second cases.[28]

---

[28]*See In re Applin*, 108 B.R. 253, 257 (Bankr. E.D. Cal. 1989) (holding that taking judicial notice of basic filings in the bankruptcy case is permissible to fill in gaps in the evidentiary record of a specific adversary proceeding or contested matter) and *In re Collins*, 2007 WL 2116416, *1 (Bankr. E.D. Tenn. 2007) (holding that the court may take judicial notice, pursuant to Rule 201 of the Federal Rules of Evidence, of other material undisputed facts of record in

12

There is very little difference between them. It does not show she incurred any additional debt between the two filings, that she acquired additional exempt assets between the two filings, or that she is trying to pay less for the Durango in the second case than she was in the first case (as a result of deprecation or otherwise). Nothing about these filings reveals a debtor trying to game the system. What the filings do show is a single mother trying to save her family's only car that is now over 5 years old, and which has over 90,000 miles. It also shows a Debtor who has now agreed to a wage withholding order,[29] hopefully to increase the chance that her payments will now be timely made.

In addition, the Tenth Circuit Court of Appeals has very recently reiterated the general principle, in *In re Warren*,[30] that a debtor may legitimately engage in pre-bankruptcy planning so long as there is no intent to defraud creditors. There is absolutely no evidence that Debtor here had any intent to defraud anyone, so her decision to either wait until the 911th day after buying a car to file, or, having miscalculated the days, dismissing and refiling soon thereafter to take advantage of the 910-day exception, is legitimate pre-bankruptcy planning.

The Court stresses that today's holding is limited to its facts, just as *Flygare* teaches, and that it declines to adopt a *per se* rule that all debtors may be able to file a case and then dismiss and refile it in order to change the treatment of creditors in the subsequent case. For example, if a debtor filed a bankruptcy petition 600 days after purchasing a car, negligently caused the car to depreciate faster than expected, and then dismissed and refiled after the expiration of 910 days from date of purchase,

---

the Debtors' bankruptcy case file). If Chrysler objects to the Court having taken judicial notice of the basic filings in Debtor's first and second case, it should file an immediate motion to reconsider, so the Court can determine if the facts so noticed are truly in dispute, and if Chrysler is deserving of an evidentiary hearing on those findings.

[29]Doc. 8.

[30]512 F.3d 1241 (10th Cir. 2008) (finding debt nondischargeable after debtors converted nonexempt assets to exempt assets shortly before bankruptcy), citing *Carey, Marine Midland Bus. Loans, Inc. v. Carey ( In re Carey)*, 938 F.2d 1073, 1077 (10th Cir.1991).

13

in an attempt to cram down the car at a lower value that debtor essentially created by his actions, that debtor would likely not fare as well.  Similarly, if a debtor filed a bankruptcy petition 800 days after purchasing an automobile, in an effort to halt an impending repossession of his automobile, with the intent to use the initial bankruptcy filing as nothing more than a delay tactic until 910 days had passed, so he could dismiss and refile a new case, that debtor could also find the Court less willing to find good faith.  Again, this Court will look at the totality of the circumstances in each case.

That said, Chrysler presented no evidence to support a finding that this Debtor had an intent to abuse the bankruptcy system in any way.  Instead, the evidence shows a simple 5-day math error that caused Debtor to jump through some additional hoops to achieve what would have otherwise been considered nothing more than legitimate pre-bankruptcy planning.

Because the Court finds that the totality of circumstances fail to bring into question Debtor's sincerity in seeking Chapter 13 relief or her need for Chapter 13 relief, Debtor's Chapter 13 plan was filed in good faith.  Debtor's desire to wait until after the passage of the 910 day period specified in the hanging paragraph in § 1325(a) before filing her petition and completing a plan does not show a lack of good faith.  "[T]he fact that the debtor is taking advantage of her legal rights is not, by itself, sufficient to support a finding of bad faith."[31]  Unfortunately for Debtor, a simple calculation error resulted in the case being filed five days too early.  Debtor's efforts to correct that error by allowing the initial case to be dismissed, and then refiling this case a short time thereafter, does not rise to the level of lack of good faith.[32]

---

[31] *See In re Shula*, 280 B.R. 903, 906 (Bankr. S.D. Ala. 2001) (citing 4 Collier on Bankruptcy ¶ 707.03, at 707-10-11 (15th ed. 1992).

[32] The Court would certainly have preferred that Debtor, upon realizing the calculation error, file her own motion to dismiss, rather than requiring the Trustee to do so.  The Court would also have preferred that Debtor make direct payments to Chrysler in the interim—at least at the "to be crammed down" rate, rather than allow the arrearage to increase while she waited for the case to be dismissed.  The Court finds that under the totality of the circumstances,

14

in an attempt to cram down the car at a lower value that debtor essentially created by his actions, that debtor would likely not fare as well.  Similarly, if a debtor filed a bankruptcy petition 800 days after purchasing an automobile, in an effort to halt an impending repossession of his automobile, with the intent to use the initial bankruptcy filing as nothing more than a delay tactic until 910 days had passed, so he could dismiss and refile a new case, that debtor could also find the Court less willing to find good faith.  Again, this Court will look at the totality of the circumstances in each case.

That said, Chrysler presented no evidence to support a finding that this Debtor had an intent to abuse the bankruptcy system in any way.  Instead, the evidence shows a simple 5-day math error that caused Debtor to jump through some additional hoops to achieve what would have otherwise been considered nothing more than legitimate pre-bankruptcy planning.

Because the Court finds that the totality of circumstances fail to bring into question Debtor's sincerity in seeking Chapter 13 relief or her need for Chapter 13 relief, Debtor's Chapter 13 plan was filed in good faith.  Debtor's desire to wait until after the passage of the 910 day period specified in the hanging paragraph in § 1325(a) before filing her petition and completing a plan does not show a lack of good faith.  "[T]he fact that the debtor is taking advantage of her legal rights is not, by itself, sufficient to support a finding of bad faith."[31]  Unfortunately for Debtor, a simple calculation error resulted in the case being filed five days too early.  Debtor's efforts to correct that error by allowing  the initial case to be dismissed, and then refiling this case a short time thereafter, does not rise to the level of lack of good faith.[32]

---

[31] *See In re Shula*, 280 B.R. 903, 906 (Bankr. S.D. Ala. 2001) (citing 4 Collier on Bankruptcy ¶ 707.03, at 707-10-11 (15th ed. 1992).

[32] The Court would certainly have preferred that Debtor, upon realizing the calculation error, file her own motion to dismiss, rather than requiring the Trustee to do so.  The Court would also have preferred that Debtor make direct payments to Chrysler in the interim—at least at the "to be crammed down" rate, rather than allow the arrearage to increase while she waited for the case to be dismissed.  The Court finds that under the totality of the circumstances,

14

Further, this decision by Debtor to either allow dismissal or to dismiss her case on her own motion was not without consequence, because revisions to the bankruptcy code created by BAPCPA place additional burdens on debtors who file more than one case in any twelve month period. As a result of the repeat filing, Debtor was required to come before the Court and prove that the current case was filed in good faith in order to enjoy the protections of the automatic stay in § 362 beyond the first 30 days following the filing of the petition.[33] Debtor has faced the consequences recently established by Congress for being a repeat bankruptcy filer, and the Court is not willing to adopt the additional punishment requested by Chrysler Financial based upon the facts presented.

## III.   CONCLUSION

The Court overrules Chrysler Financial's objection to confirmation of Debtor's Chapter 13 plan. Upon considering the totality of the circumstances, including the factors set forth in *Flygare*, the Court finds that Debtor's Chapter 13 plan was filed in good faith, and should be confirmed.

**IT IS, THEREFORE, BY THE COURT ORDERED** that DaimlerChrysler Financial Services Americas, L.L.C.'s Objection to Confirmation of Debtor's Chapter 13 Plan[34] is overruled, and Debtor's plan is confirmed.

###

---

however, these omissions do not require a finding that the case was not filed in good faith.

[33] *See* 11 U.S.C. § 362(c)(3).

[34] Doc. 16.